IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAHMOUD SHAMAH, | ) | |
| | ) | |
| Petitioner, | ) | No. 12 C 0742 |
| | ) | 06 CR 782 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Mahmoud Shamah filed a pro se Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel for his attorney's failure to fully explore, negotiate and inform him of the government's plea offers, for his attorney's failure to seek a theft instruction in his jury trial, and for the cumulative errors of his attorney. For the reasons described below, the motion is denied.

**BACKGROUND**

Petitioner is a former Chicago police officer who, along with his partner Richard Doroniuk, and a drug informant, Larry Cross, developed a scheme to detain suspected drug dealers and steal money and drugs from them. The scheme began with petitioner and Doroniuk stealing money and drugs from suspects upon arrest, instead of properly inventorying it. Petitioner and Doroniuk would later plant the stolen drugs on other individuals if stops or searches did not establish probable cause for an arrest.

In 2006, petitioner and Doroniuk began soliciting the advice of Cross, who advised them which drug dealers would be carrying large amounts of cash and also served as a "John Doe" informant who supplied information to allow the officers to obtain search warrants to target these

individuals. Petitioner and Doroniuk conducted vehicle stops and premises searches, taking drugs and cash from the individuals they searched.

The FBI began investigating petitioner and set up an undercover operation wherein Cross was told that large amounts of cocaine and money were being held in a store locker unit. Petitioner and Doroniuk obtained a search warrant and took a bag filled with $20,000 from the locker without inventorying it. Two months later, the FBI set up a similar operation, and petitioner and Doroniuk again stole money from a storage unit.

Petitioner, Cross, and Doroniuk were arrested and charged with conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), civil rights conspiracies, possession of a firearm during and in relation to a violent crime, conspiracy to steal government funds, and two counts of theft of government funds. Petitioner was acquitted of the charge of possession of a firearm during and in relation to a violent crime, but was found guilty on the remaining counts and sentenced to 232 months of imprisonment.

Petitioner appealed his sentence, and on October 12, 2010, the Seventh Circuit affirmed his conviction and sentence. On February 12, 2012, petitioner timely filed his initial § 2255 motion.

**Legal Standard**

**A.    2255 Petitions**

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, constitutional, or there has been a "complete miscarriage of justice." See Harris v.

United States, 366 F.3d 593, 594 (7th Cir. 2004); Bischel v. United States, 32 F.3d 259, 263 (7th Cir. 1994) (internal quotations and citations omitted). The record is reviewed and all reasonable inferences are drawn in favor of the government. See United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000); Messinger v. United States, 872 F.2d 217, 219 (7th Cir. 1989).

Section 2255 petitions are subject to various bars, including procedural default. The Seventh Circuit has noted that § 2255 petitions are "'neither a recapitulation of nor a substitute for a direct appeal.'" McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (citations omitted). Therefore, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. See Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)). An ineffective assistance of counsel claim may be brought in a § 2255 motion regardless of whether the claim was raised on appeal. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

**B.     Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient, and that counsel's deficient performance "prejudiced his defense" by demonstrating that it is reasonably likely that, but for his counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983); Whitman v. Bartow, 434 F.3d 968, 972 (7th Cir. 2006). To show that counsel's performance was deficient, the petitioner must demonstrate that the

representation "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Id. at 690. To satisfy the prejudice element, counsel's errors must be so serious as to have deprived the petitioner of a fair trial (i.e., one in which the result is reliable). Lockhart v. Fretwell, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by [the petitioner]." Strickland, 466 U.S. at 697.

The petitioner bears the burden of persuasion, and "unsubstantiated and largely conclusory statements fall far short of carrying his burden of persuasion as to the two elements of the test outlined in Strickland." United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91.

## DISCUSSION

## I.  Ineffective Assistance of Counsel Claim for Failure to Explore Plea Possibilities

Petitioner's initial § 2255 motion claims that his trial counsel was ineffective for failing to fully explore, negotiate, and inform him of the government's plea offers. He further alleges that counsel "independently" decided to risk going to trial and rejected a plea deal offered by the government in a proffer session. Petitioner contends that he was entitled to the same plea deal

4

that his co-defendant received, and if he had been informed of the offer, he would have taken the plea instead of proceeding to trial.

Although defendants have no constitutional right to be offered a plea agreement, the Supreme Court has held that, in some circumstances, it may be ineffective assistance of counsel for an attorney to fail to relay potential plea deals to his or her client. <u>Missouri v. Frye</u>, 132 S.Ct. 1399 (2012). When there is a "formal offer[] from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," defense counsel has the duty to communicate that offer to the accused. <u>Id</u>. at 1408. A formal offer, according to the <u>Frye</u> court, is one with "a fixed expiration date." <u>Id</u>.

Petitioner's initial filing claims that the alleged plea offer that was not properly communicated was an offer of no more than 17 years of imprisonment made at a proffer session. Petitioner does not explain how he belatedly became aware of the alleged plea offer. He claims that, because his co-conspirators were offered plea bargains, this is evidence that the government was also willing to extend an offer to petitioner.

The government counters that it made no official plea offer. Additionally, the government points out that because petitioner was present at the proffer, any plea offer made would have been in his presence, therefore negating any claim that counsel did not communicate an offer to petitioner. In support of the contention that no offer was made at the proffer sessions, the government has provided the reports of those proffers. None contain mention of a plea offer. The government also points to defense counsel's remarks at sentencing, which indicate that no plea offer was made at the proffer, but rather that the parties were not successful in working out

5

any sort of agreement at these sessions because petitioner did not provide the government with any useful information.

Petitioner does not provide any evidence to support his contention that a plea was offered and not communicated. Instead, in his reply brief, petitioner amends his argument to claim that counsel failed to properly advise petitioner of his sentencing exposure, and that this resulted in the rejection of the plea agreement. He states that his attorney "did not properly advise him to negotiate a plea agreement and did not dissuade him from proceeding to trial in a case that offered no real line of defense." The court will address both of petitioner's alternative claims: that a plea offer was made but not communicated, and that the offer was communicated but petitioner's counsel did not properly dissuade him from going to trial.

Petitioner's initial claims regarding the failure to negotiate a plea agreement fail because petitioner has not demonstrated that a plea offer was made. Petitioner's own filings negate his claim that an offer was made and not communicated to him, as he claims the offer was made at a proffer session which he attended.

Petitioner's alternative claim, that his attorney did not fully apprise him of the obstacles he faced and dissuade him from going to trial, also fails. Petitioner's trial counsel argued at sentencing that cooperation and proffers are "a race to a courthouse," and that his client "lost that race." He also stated that petitioner "didn't have anything but [his co-conspirator] to give" and "was thrown out of the proffer as a result." These remarks corroborate the government's version of events that petitioner attempted to cooperate but did not receive a plea offer because he did not provide the government with any cooperation beyond information regarding his co-conspirators who had pled. Although petitioner's co-defendants were offered plea bargains, it

cannot be assumed the government intended to offer the same to petitioner; such offers are entirely within the discretion of the prosecution, and the extension of a plea offer to one co-defendant does not necessitate the conclusion that plea offers would be offered to all, contrary to the petitioner's argument. Drawing all inferences in favor of the government, as the court must do in evaluating Section 2255 claims, the court concludes no plea offer was made.

Because no offer was made, petitioner's only other option besides trial would have been a plea declaration. In light of those options, counsel's conduct in proceeding to trial instead of attempting to "dissuade [petitioner] from proceeding to trial" was not objectively unreasonable under Strickland. Petitioner himself concedes in his reply that counsel's choice was not unreasonable. Further, even if counsel's performance was unreasonable, petitioner cannot demonstrate that he was prejudiced by this decision to go to trial. A timely plea declaration on its own does not entitle a defendant to a three level reduction in his offense level for acceptance of responsibility, as petitioner claims. See U.S.S.G. § 3E1.1, cmt. n. 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."); see also United States v. Wallace, 280 F.3d 781, 785-86 (7th Cir. 2002); United States v. Travis, 294 F.3d 837, 840 (7th Cir. 2002). Although petitioner claims that he is entitled to a sentence similar to the one his co-defendant received, this is simply not accurate, because his co-defendant pled and cooperated first, thereby securing a plea agreement and the potential for a lower sentence. The government is not required to offer all co-defendants the same plea deal and did not do so in this case. The possibility of prejudice alleged by petitioner does not meet the actual prejudice standard required by Strickland, and therefore petitioner has not met his burden that a plea would have resulted in a lower sentence.

7

Petitioner also alleges ineffective assistance of counsel on the grounds that his counsel made the decision to go to trial on his own, without consulting petitioner. This argument is untenable. Petitioner was certainly present at trial and aware that his case was being tried to a jury instead of being resolved short of trial. At no point did petitioner object to the course of the proceedings or inform the court that counsel had proceeded to trial against petitioner's desire to enter a plea. Petitioner, a (former) sworn police officer, does not allege that he did not know he could pursue a guilty plea instead of a trial. To the extent that petitioner argues that counsel's theory of the case and "all-or-nothing" approach was contemplated by counsel alone, and therefore unreasonable, it is well established that counsel's trial strategy decisions are entitled to deference. See Johnson v. Thurmer, 624 F.3d 786, 792 (7th Cir. 2010) ("It is well established that our scrutiny of counsel's trial strategy is to be deferential and that we do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient."). Further, counsel's comments at sentencing[1] indicated that this decision to go to trial and the defense approach were with petitioner's understanding and consent. Petitioner did not contradict or disagree with these statements at the sentencing hearing, at which he was given full opportunity to allocute.

## II. Ineffective Assistance of Counsel Claim for Failure to Submit Particular Jury Instructions

Petitioner's second claim is that counsel was ineffective for failing to seek a theft instruction, which the jury could then compare to the robbery instruction, and find petitioner

---

[1] It should be noted that petitioner's counsel convinced the court to reduce petitioner's advisory guideline sentence by five years below the low end of the recommended range.

guilty of the lesser predicate crime. Petitioner argues that had jury found him guilty of the lesser predicate charge, they would have found him not guilty of the RICO charge, because theft is not a predicate crime for RICO. To prevail on his claim of ineffective assistance for failure to seek a theft instruction, petitioner must show that his trial counsel's failure to request the theft instruction rendered counsel's performance objectively unreasonable and that the deficient performance prejudiced the trial's outcome. Strickland, 466 U.S. at 686, 104 S.Ct. 2052.

Petitioner's second claim fails because he has failed to demonstrate that counsel's actions fell below the performance standard required by Strickland. A defendant is entitled to present his defense to the jury, and his argument that he was guilty of theft and not robbery was presented to the jury throughout the trial and in closing argument. Petitioner focuses on the jury instructions, relying on cases that state that a defendant is entitled to a lesser included offense instruction "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

Theft, however, is not a lesser included offense of one of the crimes with which petitioner was charged. Theft is a lesser included offense of robbery, which was the predicate offense for the RICO charge. This case therefore presents a slightly different question: whether a defendant is entitled to lesser offense predicate instruction, and whether failure to seek such an instruction amounts to ineffective assistance of counsel.

Other circuits have examined the claim that defendants are entitled to a lesser-included predicate instruction in a RICO case and rejected it, with persuasive reasoning. As the Third Circuit explained in United States v. Forsythe, 594 F.2d 947, 952 (3d Cir. 1979), "[t]he purpose

9

of an instruction on a lesser included offense is to give the defendant the benefit, not of the possibility that the jury will find him not guilty, but rather of the additional possibility that it may find him guilty of an offense carrying a less severe sentence." If the jury in petitioner's case had determined that petitioner was guilty of the predicate offense of theft, which is insufficient to sustain a RICO conviction, then defendant would have been acquitted of the RICO charge, not convicted of an offense carrying a less severe sentence. As in Forsythe, the court in petitioner's case "properly charged that the government had to prove each element of the predicate felony before the defendant could be found guilty of anything," and "[a] charge respecting an offense of which the defendant could not be found guilty was not required." Id; see also United States v. Nguyen, 255 F.3d 1335, 1340 (11th Cir. 2001) (concurring with the reasoning in Forsythe); United States v. Fowler, 535 F.3d 408, 421 (6th Cir. 2008) ("[T]here is no such thing as a lesser-included-predicate-act instruction."); United States v. Houston, 648 F.3d 806, 819 (9th Cir. 2011) cert. denied, 132 S. Ct. 1727, 182 L. Ed. 2d 264 (U.S. 2012) (joining the other circuits in rejecting the "lesser-included-predicate-offense instruction"). In his reply, petitioner argues that counsel made the decision to forego the theft jury instruction on his own. It would have been futile, however, for counsel to request the theft jury instruction because such an instruction would have been improper in this case, as Forsythe demonstrates. Petitioner was not charged with robbery or theft; he was charged with RICO offenses. The jury was properly instructed on the elements of RICO and the predicate crime, and had the jury found that the government did not prove those elements beyond a reasonable doubt, the jury would have acquitted petitioner. Because petitioner was not entitled to the jury instruction on theft and such

an instruction would have been improper, counsel's performance in not requesting the instruction did not fall below the Strickland standard.

Further, petitioner has not demonstrated actual prejudice from the absence of the instruction; petitioner's counsel presented the theft theory of the defense throughout the case and in detail in closing argument. The jury was well aware of petitioner's defense theory that he was not guilty of robbery, but rather of theft and conspiracy to commit theft. The absence of the jury instruction did not deprive defendant of the ability to present his defense to the jury.

### III. Ineffective Assistance of Counsel Based on Cumulative Error

Finally, petitioner argues that the cumulative effect of the errors by trial counsel resulted in ineffective assistance of counsel. Because the court has found that counsel did not commit error in failing to resolve the case short of trial or failing to request an instruction on theft, the court finds no cumulative error.

### CONCLUSION

For the reasons described above, petitioner's motion to vacate his sentence is denied.

**ENTER:** **April 2, 2013**

_____

**Robert W. Gettleman**
**United States District Judge**

11